**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **JET SYSTEMS, LLC**<br>**48015-1 Pine Hill Run Road**<br>**Lexington Park, Maryland 20653**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff JET Systems, LLC ("JET"), by and through its undersigned counsel, brings this Complaint against Defendant United States of America, by and through the U.S. Department of the Navy ("DoN"), and states as follows:

## INTRODUCTION

1. This case arises out of concerted action by the United States Navy ("USN") and its contractor J.F. Taylor, Inc. ("JFTI") to misappropriate Plaintiff's proprietary Adaptive Layer Framework ("ALF") software products and documentation to use for their own purposes without compensating Plaintiff and causing Plaintiff further reliance and consequential damages.

2. Plaintiff alleges herein that Defendant United States Navy has committed the common law tort of conversion in exercising unauthorized dominion over Plaintiff's personal property, contingent with JFTI's breach of a USN-directed purchase order with JET for JET's software and documentation by not making payment after JET delivered its software and documentation to Defendant United States Navy in compliance with the purchase order.

3. This action seeks to recover damages resulting from such tortious acts.

## PARTIES

4. Plaintiff JET is a Maryland corporation with its principal place of business located at 48015-1 Pine Hill Run Road, Lexington Park, Maryland 20653. JET develops, maintains, and innovates systems for specific and common mission capabilities, combat aides, and surveillance systems. JET supports platforms related to Small Unmanned Aerial Vehicles (SUAV), Unmanned Aerial Vehicles ("UAV"), and manned vehicles for the Department of Defense ("DoD"), the National Aeronautics and Space Administration ("NASA"), the Department of the Army ("DoA"), and other government agencies. JET provides solutions through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use. In return, the government utilizes JET to provide ongoing support activity or to prepare the customer to be a lead systems integrator. JET has developed its proprietary Adaptive Layer Framework ("ALF") software products and documentation.

5. Defendant United States of America, in this matter has acted by and through the U.S. Department of the Navy ("DoN"), Naval Air Systems Command ("NAVAIR"), which upon information and belief is headquartered in Patuxent River, Maryland with military and civilian personnel stationed at eight locations across the continental United States and one site overseas. According to its website, https://www.navair.navy.mil/organization/NAVAIR, accessed on March 27, 2025, NAVAIR delivers integrated air warfare capabilities to enable the fleet to compete, deter, and win – tonight, tomorrow and in the future.

## **JURISDICTION AND VENUE**

6.      This Claim is made under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, for the common law tort of conversion. Section 2675(a) of that act requires that

> "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

A completed and signed Standard Form 95 – Claim for Damage, Injury, or Death – was submitted to Defendant United States Navy on August 2, 2024, and received on August 13, 2024 by the Tort Claims Unit of the United States Navy Office of the Judge Advocate General. A copy of the August 14, 2024 letter from the Tort Claims Unit, including a date-stamped copy of the completed and signed Standard Form 95, is attached hereto as Exhibit A. Plaintiff has received no response from Defendant other than the documents in Exhibit A.

7.      Further pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675(a), "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Plaintiff deems the agency's failure to make a final disposition within six months after it is filed to be a final denial of the claim. Thus, Plaintiff is eligible to file this Complaint in this Court.

8.      Pursuant to 28 U.S.C. § 1346(b)(1), the US District Courts "have exclusive jurisdiction of civil actions on claims against the United States, for money damages, … for injury or loss of property, … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would

be liable to the claimant in accordance with the law of the place where the act or omission occurred."

9. The Supreme Court of the United States has noted that the common law intentional tort of conversion is actionable under the FTCA. *Levin v. United States*, 568 U.S. 503, 507 (2013) fn. 2 ("Section 2680(h) does not remove from the FTCA's waiver all intentional torts, *e.g.*, conversion and trespass[.]").

## FACTS

10. The DoN has had a continuing interest in Plaintiff's Adaptive Layer Framework products. The term Adaptive Layer Framework is known by DoN and throughout the industry to refer to Plaintiff's products. The DoN even wrote ALF into its Core Avionics Master Plan 2020 ("CAMP"), attached as Exhibit B. *See* CAMP at Appendix A-1, page 10: under

> 2. Funded Enhancements and Potential Pursuits – "Open Architecture Middleware Interface to Operational Flight Profile (OFP) – Adaptive Layer Framework (ALF) (2022)]."

The description included the statements that "OPNAV has funded PMA-209 to generate such middleware to enable more efficient utilization of legacy platform OFP code and software applications," and "the first development effort will result in the generation of modules that can simplify and reduce the cost of similar middleware development efforts and implementation of developed software on other platforms." In other words, the US Navy considers Plaintiff's ALF products to be exemplary of the modular, open architecture middleware that the CAMP 2020 has both funded and whose development DoN intends to pursue further.

11.     Since at least 2019 the Government has expressed to JET its desire to acquire and incorporate JET products in its array of systems to support its mission. Specifically, on or about Friday, June 28, 2019, Barry Foltz of the NAVAIR PMA-209 Air Combat Electronics Program Office ("PMA-209") wrote in a text message to Scott Jaster

> I'd love to see jet get the f18e/F ofp away from boeing. They get $200.0M each release every two years and have pma265 over barrel. . .

A copy of the June 28, 2019 text message is attached hereto as Exhibit C.

12.     The inclusion of Plaintiff's ALF in the DoN's CAMP 2020 as the primary software framework solution and the fact that money was obligated demonstrated a long-term intent for the DoN to use Plaintiff's products. This long-term intent is further evident in an August 22-23, 2023 email exchange between Scott Jaster of JET and Roberto Semidey of DoN's F/A-18 & EA-18G Program Office, PMA-265. In that exchange, Mr. Semidey asks for guidance from JET regarding the elements and pricing of deliverables to be included in DoN's future plans through Fiscal Year 2026 and beyond. The projected costs for those deliverables were incorporated in a draft PowerPoint slide included in the email. The slide projected Phases I, II, and III of the DoN's Processing Infrastructure Modernized Architecture (PRIMA) plan. An updated version of the slide was incorporated as page 4 in a PowerPoint presented in a briefing titled "PRIMA's Transformation of F/A-18 – Faster, Cheaper, Innovative Capability." The updated slide projected Phases I, II, III, and IV, with firm anticipated costs assigned to Phases I, II, and III. The August 22-23, 2023 email exchange together with the briefing PowerPoint is attached hereto as Exhibit D.

13. Consistent with the DoN's interest in Plaintiff's Adaptive Layer Framework products, the Government began negotiating directly with JET regarding the use of ALF in the MCAP program, along with the DoN's contractor J.F. Taylor, Inc. ("JFTI"). Specifically, on or about April 18, 2022, Scott Jaster of JET via text message told Jeff Williamson of PMA-209/Multi-Use Laboratory Environment ("MULE")

> wanted to close a loop on my conversation with JFT. They are apparently wanting to bring us on to start working MCAP software, but they said they had hardly any direction with that, so I suggested some things to get the ball moving, and they said that sounds fine to them as long as it was fine with you. So I wanted to go over those details with you."

Jeff Williamson of PMA-209 responded "We are working to get money to everyone bu[t] it's looking more like late June. I believe jfti is sitting [*sic*] up a joint meeting." A copy of the April 18, 2022 text message exchange is attached hereto as Exhibit E.

14. Prior to issuing a Request for Quote for Baseline ALF, JFTI relayed to JET the Government's follow-on plans for acquiring enhanced products from JET after delivery of Baseline ALF. Specifically, in a May 17, 2022 email Matt Campbell stated

> I did talk with Jeff Williamson [of PMA-209] today and he re-iterated something I was missing … that the government wants you to deliver the ALF products as they exist today (which I understand is not in a Red Hat Linux OS correct?) up front in the program (with government rights of course). This will give you something to bill against immediately while the Red Hat version is being developed.

A copy of the May 17, 2022 email is attached hereto as Exhibit F.

15. The Government confirmed directly with JET their follow-on plans for acquiring enhanced products from JET, in a series of text message and telephone conversations occurring between May 20 and May 25, 2022. First, in a May 20 text message in which Scott Jaster told Jeff Williamson of PMA-209

> Was just thinking about what you said about 'phase 2', the [20]23 money, and 'putting everything together', I just wanted to understand better what

6

>that was so I can differentiate it from what we are doing with hosting onto RHEL and MCAP.

Further, in a May 25 text message Scott Jaster followed up, again communicating directly with Jeff Williamson: "The total number for RHEL on to MCAP (with all of the interfaces and APIs and breakout of functional decomposition to include leverageable SDK and Core interfaces) Was initially $7.68M like you and I discussed previously, but you said you only had $8M for us that effort." After these and more text messages as well as a telephone conversation with Scott Jaster, Jeff Williamson replied via text message "No worries." A copy of the text messages between May 20, 2022 and May 25, 2022 are attached hereto as Exhibit G.

16. On August 1, 2022 Scott Jaster of JET and Matt Campbell of JFTI discussed via email the precise contents of JET's proprietary Baseline ALF software products and documentation. A copy of the August 1, 2022 email exchange between Mr. Jaster and Mr. Campbell is attached as Exhibit H.

17. SDK (Software Development Kit), Core, software adapters, and support to MULE from JET were not included in JET's Baseline ALF software products and documentation. This fact is made plain in the 1:03 p.m. Monday, August 1, 2022 email from Scott Jaster of JET to Matt Campbell of JFTI, in which Scott Jaster points out ". . . it appears that the MULE is expecting product delivery *and* additional training and interaction, which is fine. However, this 4.074M is *a product purchase only*[.]" (italics added). In that same email, Scott Jaster provides a detailed "list of deliverables that were originally discussed and priced out for this $4.074M." In a response email less than two hours later, Matt Campbell of JFTI states

>We will take the list below and make sure that is what we put in the PO for Baseline ALF. If we need more documents than that we can possibly

include those in the 2nd PO. But we will have separate meetings to talk about what is required for that effort.

See Exhibit H.

18.     As part of JFTI's contract with the United States Navy ("USN") to design, develop, build, and test prototype computers for the NAVAIR PMA-209 Air Combat Electronics Program Office ("PMA-209") Mission Computer Adjunct Processor ("MCAP") Program, the USN asked JFTI to issue a purchase order to JET for JET's proprietary Baseline ALF software products and documentation.

19.     In response to the USN's request, on or about August 5, 2022, JFTI issued the Request for Quote, a copy of which is attached as Exhibit I hereto.

20.     25.     Three days later, on or about August 8, 2022, JET responded with a Quote, a copy of which is attached as Exhibit J hereto.

21.     JFTI accepted JET's bid and on or about August 17, 2022 issued Purchase Order ("P.O. 309975"), a copy of which is attached as Exhibit K hereto.

22.     P.O. 309975 was issued pursuant to Standard Terms and Conditions ("ST&C") appearing on JFTI's website. A copy of the ST&C is attached as Exhibit L hereto.

23.     The ST&C, Paragraph 28, summarizes the applicable DFARS/FAR Clauses for all procurements, included among which is DFARS 252.227-7014 (Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation).

24.     DFARS 252.227-7014 applies to P.O. 309975 because JET's proprietary Baseline ALF software products and documentation are not "commercial computer software" and its documentation as defined in Sections (a)(1) and (5) of the DFARS.

25. Had the P.O. gone forward, the Government might have rights – granted by JET – in the delivered software and the documentation pursuant to DFARS 252.227-7014(b)(3), but the contract did not go forward when JFTI, at the Government's direction, breached its contract with JET and canceled P.O. 309975.

26. P.O. 309975 required delivery of the software and documentation on or before September 11, 2022.

27. The only written contract by and between the parties is set forth in the items discussed above and attached as Exhibits I-L hereto. There are no other written agreements by and between JET and JFTI with regard to the legal defined deliverables as delineated in the Request for Quotation, Quote, and P.O. 309975.

28. PMA-209 was sufficiently aware of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, that PMA-209 accepted delivery of ALF software directly from JET, instead of from the Prime contractor JFTI. Despite this awareness, PMA-209 returned its authorized copy of ALF not directly to JET Systems, but rather to JFTI. These facts are admitted in a November 13, 2023, letter from Commander, Naval Air Systems Command to Office of the National Ombudsman, U.S. Small Business Administration, a copy of which is attached as Exhibit M.

29. Even prior to receiving instructions from PMA-209 regarding delivery of ALF directly to the Government by JET Systems, JFTI had given similar instructions to JET Systems, in a letter dated August 5, 2022. A copy of the August 5, 2022, letter is attached as Exhibit N.

30. In an email of August 18, 2022, Kim Skidmore of JFTI confirmed and approved that JET Systems would deliver ALF directly to the Government. The August 18, 2022, email is attached as Exhibit O.

31. In a text message exchange September 6-7, 2022, Jeff Williamson of PMA-209/MULE acknowledged JET Systems' desire to avoid delivery of ALF Software to or through JFTI. The text message exchange of September 6-7 is attached as Exhibit P.

32. On or about September 9, 2022, after discussions with the Government, JET delivered a copy of its source code and documentation directly to the Government.

33. In an email sent at 8:22 a.m. Tuesday, September 13, 2022 – after JET had successfully delivered its Baseline ALF source code and documentation directly to the Government per P.O. 309975, Matt Campbell of JFTI explicitly acknowledged that ALF Core and SDK "were not listed as deliverables on our current order." However, Matt Campbell persisted, inquiring on behalf of the Government

> Could they be added to this order? IE are you willing to deliver them with government rights? (JFTI is willing to modify the order request if need be)
> If they were to be added to this order, would there be additional cost? If so, how much?
> You mention they are both still in development. How much more time is needed to finish development?

In response to the emailed questions, Scott Jaster of JET responded at 11:44 a.m.

Tuesday, September 13, 2022

> As for ALF Core and SDK, those items will not be "completed" within enough time to add them to this particular transaction that we are trying to close out, but they can certainly be added on as a future delivery if desired.

The email exchange of Tuesday, September 13, 2022 is attached hereto as Exhibit Q.

10

34. On or about September 27, 2022, Matt Campbell of JFTI sent an email to Scott Jaster of JET, relaying to JET a request from the Government to amend P.O.309975 to include delivery of products and services not included in P.O. 309975 (ALF Core, SDK, and support to MULE), in exchange for "a 50% payment for what you have delivered so far." Given that JET had already fully met its obligations under P.O. 309975, JET did not accept the coercive offer from JFTI and the Government. A copy of the September 27, 2022 email from Matt Campbell is attached as Exhibit R.

35. On September 28, 2022 in an email to Peter Allen of JET Systems, Kevin Pilkerton of PMA-209 announced that the MULE team had successfully built the JET delivered ALF software in VxWorks. In order to accomplish this build, the PMA-209/MULE team necessarily copied the ALF software. In the same email, Pilkerton explained that PMA-209/MULE had ALF products up and running in its lab, but was experiencing issues it could not address successfully. Pilkerton, on behalf of the entire MULE team, requested help from JET Systems to "resolve the issue." A copy of the September 28, 2022, email from Kevin Pilkerton of PMA-209 is attached as Exhibit S.

36. In a text message exchange on October 18, 2022 between Scott Jaster of JET and Jeff Williamson of PMA-209/MULE while the Government was withholding payment on P.O. 309975, Williamson states " I worked to get you 50% you did[n't] take it." After Scott Jaster explains that JET has satisfied its obligations under P.O. 309975, Williamson responds "It's out of my hands." A copy of the October 18, 2022 text message exchange is attached as Exhibit T.

37. On or about November 10, 2022, the Government sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a

11

response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable. A copy of the Government's Letter of Concern is attached as Exhibit U hereto.

38. JFTI then sent a letter to JET dated November 14, 2022, informing JET that it considered JET to be in breach of P.O. 309975 based on the Government's Letter of Concern and provided JET until 12:00 noon on Wednesday November 23, 2022, to complete performance and cure its alleged breach. A copy of JFTI's November 14, 2002, letter is attached as Exhibit V hereto.

39. JET denied any breach and commenced negotiations, but JFTI failed to acknowledge that JET had complied with the terms and conditions of the Purchase Order. By letter dated December 9, 2022, JFTI notified JET that P.O. 309975 was terminated for cause. A copy of JFTI's December 9, 2022, letter is attached as Exhibit W hereto.

40. Neither JFTI nor the Government made any payments to JET under the Purchase Order, which was wrongfully terminated.[1]

41. JET has registered its copyright in the software code for its proprietary Adaptive Layer Framework software (Registration Number TX 9-384-065).

---

[1] Separate actions for infringement of copyright (U.S. Court of Federal Claims, No. 24-cv-1166) and for breach of an implied-in-fact contract (U.S. Court of Federal Claims, No. 25-cv-00193) are being brought against the United States. These two actions in the U.S. Court of Federal Claims have been consolidated in No. 24-cv-1166. Plaintiff has also sued JFTI for infringement of copyright, violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, conversion, breach of contract, violation of the Maryland Uniform Trade Secrets Act, Md. Commercial Law Code §§ 11-1202 through 11-1207 (2022), and breach of contract. *See JET v. JFTI*, 8:24-cv-01628 (D. Md. June 5, 2024).

42. On or about February 27, 2023, JFTI returned a Compact Disk containing the delivered software and documentation to JET. However, before returning the software, upon information and belief, and as shown below, JFTI and the Government made unauthorized copies in violation of JET's registered copyright in the software and constituting misappropriation of trade secrets and conversion.

43. On or about 12:30 p.m. December 5, 2022, a telephone conference was held between Scott Jaster of JET; and Wayne Taylor, Matt Campbell, Natalie Morris, and Tammy Sparks, all of JFTI. A copy of the conference call notice sent by Matt Campbell of JFTI is attached as Exhibit X. On information and belief, the conference call notice was sent to all named conference call participants.

44. During the December 5, 2022 conference call, JFTI personnel admitted that they evaluated the ALF software that JET had delivered not to JFTI, but to the Government. This admission is memorialized in the email sent from Scott Jaster to Tammy Sparks of JFTI on Wednesday, December 14, 2022 at 10:22 AM ("It was stated in the last phone call meeting that JFTI reviewed and assessed the delivered products, and that they 'agree' with the Government's assessment.") The same admission was again memorialized in an email from Scott Jaster to Tammy Sparks on December 15, 2022 at 11:11 AM. Copies of the December 14, 2022 and December 15, 2022 emails are attached as Exhibit Y.

45. On information and belief, JFTI copied ALF software at the USN's direction ostensibly under JFTI Prime Contract number N00421-22-9-0003, paragraph 2.4.1.10 Reusable Software Products:

> The Performer (JFTI) shall integrate ALF into the MCAP software environment during the modification phase, coordinating with the

13

> Government as needed during SETR events. The Performer (JFTI) shall deliver the updated ALF software, with Government Purpose Rights, using DI-IPSC-81488 as guidance (Deliverable D68).

46. The Government in collaboration with JFTI also made the software and its documentation available to other parties, including Precise Systems. Specifically, on information and belief, PMA-209 awarded Support Contract number N0042122R3013 to Secise/Precise around January 10, 2024. In the Statement of Work published by PMA-209, on June 15, 2023, the contract was to be awarded to a contractor having "[d]emonstrated experience with adaptive layer framework." A copy of the relevant contract paragraphs is attached at Exhibit Z.

47. On information and belief, Support Contract number N0042122R3013 was withdrawn from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems.

## CAUSES OF ACTION

## COUNT I: COMMON LAW CONVERSION

48. Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-47.

49. In Maryland, conversion is an intentional tort which covers the "wrongful exercise of dominion by one person over the personal property of another." *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 480-81 (Md. App. 1986).

50. The element of intent that must be proven is the intent to exercise dominion and control over the plaintiff's property in a manner inconsistent with the plaintiff's rights. "'The intent required is not necessarily a matter of conscious wrongdoing.'" *Keys v.

*Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200 (1985) (quoting W. Keeton, Prosser & Keeton on Torts, § 15 (5th ed.1984) (footnotes omitted)).

51. By obtaining and using JET's proprietary software without its permission, the Government has committed the tort of conversion.

52. Plaintiff seeks its damages for the fair market value of the converted software, plus costs of recovery, including reasonable attorneys' fees, for the Government's willful and malicious acts in exercising unauthorized dominion and control over Plaintiff's software.

WHEREAS Plaintiff prays for the following relief:

On Count I (Common Law Conversion):

- Declaratory and injunctive relief; and
- Damages for the fair market value of the converted software plus costs of recovery, including reasonable attorneys' fees.

## **TRIAL BY JURY DEMANDED**

Plaintiff hereby demands a trial by jury on all issues in this Complaint triable of right by a jury.

Dated: April 11, 2025                                      Respectfully submitted,

                                                                                    /s/ Richard S. Toikka
Richard S. Toikka, Fed Bar No.13543
Russell O. Paige, Fed Bar No. 16035
WILT TOIKKA KRAFT, LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
202-508-3648 (phone)
240-888-8110 (mobile)
rtoikka@wtk-law.com (email)

Counsel for Plaintiff