IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JET SYSTEMS, LLC              :
                              :
    v.                        :  Civil Action No. DKC 25-1218
                              :
UNITED STATES OF AMERICA      :
                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this conversion case is the motion to dismiss for failure to state a claim filed by the United States of America ("Defendant"). (ECF No. 13). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.  Background**

    **A. Factual Background[1]**

This dispute arises from the U.S. Navy's treatment of Plaintiff JET Systems, LLC's ("Plaintiff" or "JET") software and the CD on which it was provided. Plaintiff is a government contractor that provides software services to government agencies, including branches of the military. (ECF No. 12 ¶ 4). In general, Plaintiff "develops, maintains, and innovates systems for specific

---

[1] The facts herein are undisputed unless otherwise noted.

and common mission capabilities, combat aides, and surveillance systems." (*Id.*). Plaintiff "provides solutions through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use." (*Id.*). The Government uses Plaintiff's services "to provide ongoing support activity or to prepare the customer to be a lead systems integrator." (*Id.*). Additionally, Plaintiff "has developed its proprietary Adaptive Layer Framework ('ALF') software products and documentation." (*Id.*). Plaintiff "has registered its copyright" in its proprietary ALF software. (*Id.* ¶ 42). ALF is known by the United States Navy ("Navy," "Government," or "Defendant") and "throughout the industry to refer to Plaintiff's products." (*Id.* ¶ 10).

Plaintiff alleges that the Navy "ha[s] a continuing interest" in Plaintiff's ALF products. (*Id.*). As an example of this interest, the Navy "even wrote ALF into its Core Avionics Master Plan 2020 ('CAMP')." (*Id.*). Plaintiff alleges that "[t]he inclusion of Plaintiff's ALF in the [Navy's] CAMP 2020 as the primary software framework solution and the fact that money was obligated demonstrated a long-term intent for the [Navy] to use Plaintiff's products." (*Id.* ¶ 12).

J.F. Taylor, Inc. ("JFTI") had a contract with the Navy "to design, develop, build, and test prototype computers for the NAVAIR

2

PMA-209 Air Combat Electronics Program Office ('PMA-209') Mission Computer Adjunct Processor ('MCAP') Program." (*Id.* ¶ 18). In April 2022, "[c]onsistent with [its] interest in Plaintiff's Adaptive Layer Framework products, the Government began negotiating directly with JET regarding the use of ALF in the MCAP program, along with [JFTI]." (*Id.* ¶ 13). In an August 1, 2022, email, Scott Jaster of JET told Matt Campbell of JFTI that the Navy was "expecting product delivery [of the Baseline ATF software] *and* additional training and interaction, which is fine. However, this [quoted price] is a *product purchase only*." (*Id.* ¶ 17).

The Navy "asked JFTI to issue a purchase order to JET for JET's proprietary Baseline ALF software products and documentation." (*Id.* ¶ 18). On August 5, 2022, JFTI issued to JET the Request for Quote, (*Id.* ¶ 19), which instructed that "[t]he Government requests physical delivery of software and documentation via CD or via DoD SAFE," (*Id.* ¶ 20 (quoting ECF No. 1-12)). JET responded with a quote, which JFTI accepted. (*Id.* ¶¶ 21-22). JFTI then issue the purchase order, which included clauses summarizing the Government's rights in the software and documentation, (*Id.* ¶¶ 23-26), and "required delivery of the software and documentation on or before September 11, 2022," (*Id.* ¶ 27).

Plaintiff alleges that the Government "was sufficiently aware of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying and distribution, especially by JFTI, that [it] accepted delivery of ALF software directly from JET, instead of from the Prime contractor JFTI." (*Id.* ¶ 29; *see also id.* ¶¶ 31-32).  Around September 9, 2022, "JET delivered a CD containing a copy of its Baseline ALF source code and documentation directly to the Government." (*Id.* ¶ 33).  After notifying JET that certain items were not included in the original order, Mr. Campbell "relay[ed] to JET a request from the Government to amend [the purchase order] to include delivery of products and services not [originally] included . . . in exchange for a '50% payment for what [was] delivered so far.'" (*Id.* ¶ 35).  Plaintiff alleges that because it had already met its obligations under the purchase order fully, it "did not accept the coercive offer from JFTI and the Government." (*Id.*).

Plaintiff alleges that as a result, on November 20, 2022, the Government "sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable." (*Id.* ¶ 38).  Given the Letter of Concern, JFTI deemed JET to be in breach, which JET denied.  (*Id.* ¶¶ 39-40).  On December 9, 2022, JFTI informed JET

4

that the purchase order was "terminated for cause." (*Id.* ¶ 40). JFTI and the Government did not make any payments to JET pursuant to the purchase order. (*Id.* ¶ 41). JET alleges that the purchase order was terminated wrongfully. (*Id.*). JET further alleges that as of December 9, 2022, any rights the Government may have had in the software and documentation terminated along with the purchase order. (*See id.* ¶ 26).

Sometime before February 27, 2023, the Government delivered the CD containing the ALF software to JFTI, and JFTI then returned the CD to Plaintiff around February 27, 2023. (*Id.* ¶ 43, 44). Plaintiff alleges upon information and belief that "JFTI and the Government made unauthorized copies" of Plaintiff's copyrighted ALF software before returning the CD to JET. (*Id.* ¶ 43). In support, Plaintiff points to a December 5, 2022, conference call, where it alleges that "JFTI personnel admitted that they evaluated the ALF software that JET had delivered not to JFTI, but to the Government." (*Id.* ¶ 46). Furthermore, Plaintiff alleges upon information and belief that "JFTI copied ALF software at the [Navy's] direction" pursuant to language in JFTI's Prime contract that JFTI "shall integrate ALF into the MCAP software environment." (*Id.* ¶ 47). Finally, Plaintiff alleges that the Government "made the [ALF] software and its documentation available to other

5

parties," as evidenced by a contract award "to a contractor having '[d]emonstrated experience with [ALF].'" (*Id.* ¶ 48).

### B. Procedural Background

On April 11, 2025, Plaintiff filed a complaint against Defendant, asserting a single count of conversion under the Federal Tort Claims Act ("FTCA").[2] (ECF No. 1). Defendant moved to dismiss the complaint for failure to state a claim on August 8, 2025. (ECF No. 11). Plaintiff then filed an amended complaint on August 22, 2025. (ECF No. 12). Defendant moved to dismiss the amended complaint on September 5, 2025, (ECF No. 13), and several days later, the court denied Defendant's first motion to dismiss as moot, (ECF No. 15). On September 18, 2025, Plaintiff filed its opposition to Defendant's motion to dismiss. (ECF No. 16). Defendant filed its reply on September 30, 2025. (ECF No. 17).

---

[2] There are three additional proceedings related to this case, one in this court and two in the United States Court of Federal Claims. In the other proceeding in this court, Plaintiff sued JFTI for copyright infringement, misappropriation of trade secrets, conversion, and breach of contract. *JET Systems, LLC v. J.F. Taylor, Inc.*, No. 24-cv-1628. In the Court of Federal Claims, Plaintiff sued Defendant for copyright infringement in one lawsuit and for breach of implied-in-fact contract in another; those cases have since been consolidated. *JET Systems, LLC v. United States of America*, No. 24-cv-1166; *JET Systems, LLC v. United States of America*, No. 25-cv-193.

**II. Motion to Dismiss**

    **A. Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

**B. Analysis**

When a party seeks to sue the United States in tort, the Federal Tort Claims Act applies. 28 U.S.C. §§ 2671–80. "The FTCA allows those injured by federal employees to sue the United States for damages. The statute achieves that end by waiving, in 28 U.S.C. § 1346(b), the federal government's sovereign immunity for 'certain torts committed by federal employees acting within the scope of their employment.'" *Martin v. United States*, 605 U.S. 395, 400 (2025) (quoting *Brownback v. King*, 592 U.S. 209, 212 (2021)). Section 1346(b) defines the basic tort liability as "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Under Maryland law, a conversion claim "requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor." *Thomas v. Artino*, 723 F.Supp.2d 822, 834 (D.Md. 2010) (quoting *Yost v. Early*, 87 Md.App. 364, 388 (1991)). Although "[t]he original common law rule was that a claim for conversion" was limited to tangible property, Maryland courts have since extended conversion "to the type of intangible property rights that are merged or incorporated into a transferable document." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560, 562

8

(1999). "In an action for conversion of . . . property, a plaintiff is entitled to 'the fair market value of the property at the time of conversion, with legal interest thereon on to the date of the verdict.'" *Zachair, Ltd. v. Driggs*, 135 Md.App. 403, 426 (2000) (quoting *Postelle v. McWhite*, 115 Md.App. 721, 728 (1997)).

Plaintiff's complaint asserts a single claim of conversion under Maryland law against Defendant, alleging that Defendant "obtain[ed] and us[ed] [Plaintiff's] proprietary [ALF] software without its permission." (ECF No. 12 ¶ 53). "Plaintiff seeks its damages for the fair market value of the converted software." (*Id.* ¶ 54).[3] Defendant moves to dismiss Plaintiff's state law conversion claim on the basis that it is preempted by the Copyright Act, 17 U.S.C. § 301(a), because the software falls within the subject matter of copyright. (ECF No. 13-1, at 7–8). In the alternative, Defendant argues that Plaintiff fails to state a claim of conversion for two reasons: (1) Plaintiff "does not allege that the Navy converted any physical document that embodies [Plaintiff's] rights to the ALF software"; and (2) Plaintiff was never "deprived of dominion and control over the ALF software." (*Id.* at 9–10).

---

[3] Defendant does not contest that it has waived sovereign immunity under the FTCA on this claim for conversion. *See* 28 U.S.C. § 1346(b); *id.* § 2680(h).

In response to Defendant's argument that its conversion claim is preempted, Plaintiff attempts to clarify that Defendant "converted not just the copyrighted software developed by JET, but also tangible physical property, namely 'a Compact Disk containing the delivered [Baseline ALF] software and documentation.'" (ECF No. 16, at 10 (quoting ECF No. 13-1, at 4)). "The fact that JET's tangible personal property included copyrighted software is a separate issue," Plaintiff posits, "from [Defendant's] 'wrongful exercise of dominion' and control of the CD to the complete exclusion of JET." (*Id.* at 11 (citing *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md.App. 476, 480–81 (1986))). Plaintiff argues that Defendant improperly retained the CD for "more than eleven (11) weeks" after the purchase order terminated, (*Id.* at 10), and Plaintiff hypothesizes that during those eleven weeks, Defendant "used the baseline ALF software and documentation contained [on the CD] to conduct training and to familiarize themselves with ALF and ALF products," (*Id.* at 12). Such use allegedly caused "damages in the form of lost revenue" because Plaintiff otherwise would have conducted the training. (*Id.*). Also, because CDs are more difficult to trace than purely intangible property that leaves a digital footprint, Plaintiff argues that it is "reasonable . . . to suspect that during the eleven weeks that Defendant exercised unauthorized dominion and control over the CD[,] . . . [Defendant]

10

and potentially its contractors copied and used the ALF software and documentation." (*Id.* at 13).

Plaintiff's briefing appears in fact to raise two distinct claims of conversion, one for the software and one for the CD on which the software resided. The claim for conversion of software is preempted, and the claim for conversion of the CD is not adequately alleged.

> Section 301 of the Copyright Act provides that:
>
>> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103[] . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). As the United States Court of Appeals for the Fourth Circuit has recognized, this express preemption provision in the Copyright Act is "broad and absolute." *OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 523 (4th Cir. 2017) (quoting *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1464 (4th Cir. 1997)). Courts follow a "two-prong inquiry to determine when a state law claim is preempted": (1) the work in question "must be within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102,

11

103"; and (2) if so, "then a state-law claim is preempted if 'the rights granted under state law' are 'equivalent to' those protected by federal copyright."  *Id.* (citing and quoting *Berge*, 104 F.3d at 1463).

As to the first prong, the ALF software falls squarely within the subject matter of the Copyright Act.  *See M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 435 (4th Cir. 1986) (holding that computer programs are protected under the Copyright Act); *SecureInfo Corp. v. Telos Corp.*, 387 F.Supp.2d 593, 612 (E.D.Va. Sep. 9, 2005) ("By amendment in 1980, Congress explicitly provided copyright protection to computer programs [as 'literary works']." (citing 180 A.L.R. Fed. 1 (2005); 17 U.S.C. § 101)); *ProSys, Inc. v. Johns Hopkins Bayview Med. Ctr., Inc.*, No. 07-cv-2104-WDQ, 2007 WL 9780532, at *3 (D.Md. Nov. 20, 2007) ("[C]omputer software programs[] [and] software products[] . . . are considered protected 'literary works' under § 102 of the Copyright Act." (citing *M. Kramer Mfg.*, 783 F.2d at 435; *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206-07 (3d Cir. 2002)).  In fact, Plaintiff does not appear to contest that the ALF software falls within the subject matter of the Copyright Act. (*See* ECF No. 16, at 10-13).

Instead, Plaintiff focuses on the second prong (though not in so many words), arguing in effect that its conversion claim

12

protects a right not equivalent to those protected by the Copyright Act. Plaintiff clarifies in its opposition brief that it believes its conversion claim is not preempted because Defendant converted a *tangible* object—the CD—containing a copy of the ALF software. Because a copy of the software was contained in a tangible object, as opposed to existing in purely intangible form, Plaintiff contends that its conversion claim falls outside the scope of the Copyright Act's preemption provision. (*See id.* at 11). On the one hand, "[w]here the core of the state law theory of recovery, as in conversion, goes to wrongful copying . . . it is preempted." *OpenRisk*, 876 F.3d at 524 (quoting *Berge*, 104 F.3d at 1464). On the other hand, where the state law claim contains an "'extra element that changes the nature of the state law action so that it is *qualitatively* different from a copyright infringement claim,' there is no preemption." *Océ N. Am., Inc. v. MCS Servs., Inc.*, 748 F.Supp.2d 481, 489 (D.Md. 2010) (quoting *Berge*, 104 F.3d at 1463). Accordingly, a "state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying the work." *Berge*, 104 F.3d at 1463 (quoting Paul Goldstein, Copyright, Patent, Trademark and Related State Doctrines 777 (3ᵈ ed. 1993)). In that case, however, the plaintiff may not "pursue allegations involving modification, copying, or distribution of the

13

[copyrightable work] under the auspices of a conversion claim simply because a 'tangible object embodying the work' is involved," rather the conversion claim is "limited to a claim that [the defendant] converted any tangible property containing the [copyrightable work]." *All. for Telecomms. Indus. Sols., Inc. v. Hall*, No. 05-cv-440-CCB, 2007 WL 3224589, at *11 (D.Md. Sep. 27, 2007) (citing *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984)). In other words, a plaintiff may seek recovery via conversion for the loss of the tangible property, but not for the use or reproduction of the copyrightable work contained therein.

The Copyright Act preempts the bulk of Plaintiff's conversion claim. Plaintiff alleges that Defendant improperly retained for eleven weeks the CD on which a copy of Plaintiff's ALF software resided, and that it used and reproduced the software during those eleven weeks. It is plain, then, that "the conversion claim . . . seeks to hold [D]efendant liable for encroaching on one of the exclusive rights granted by the Copyright Act—*i.e.*, the right to use and reproduce the copyrighted work." *Christen v. iParadigms, LLC*, No. 10-cv-620, 2010 WL 3063137, at *2 (E.D.Va. Aug. 4, 2010) (citing *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993), *overruled on other grounds by*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). The fact that Defendant retained the CD containing the ALF software cannot qualitatively

14

change the nature of the software conversion claim because Congress clearly contemplated that protected works such as software could be embodied in CDs.  17 U.S.C. § 101 (noting that "literary works" may be embodied in "disks").  Preemption exists to protect the balance Congress struck and cannot be so easily circumvented. *OpenRisk*, 876 F.3d at 523 (noting the balance Congress struck in the Copyright Act "between the free flow of ideas in the public domain[] . . . and the protection of certain forms of intellectual property").  Retention of the CD for eleven weeks only renders the conversion claim qualitatively different from a copyright infringement claim insofar as it seeks relief for conversion of the CD itself.[4]  The complaint, however, does not state any claim for relief for the conversion of the CD itself because it alleges that Defendant "committed the tort of conversion" by "obtaining

---

[4] Plaintiff's argument that it suffered damages "separately identifiable from copyright damages," including "suspect[ed]" lost "training and interaction" revenue, (ECF No. 16, at 11–13), does not save its conversion claim from preemption.  Plaintiff does not explain why such "separately identifiable" damages would not be recoverable in a copyright infringement claim.  *See* 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages[.]").  Moreover, its mere suspicions of such damages cannot surpass the pleading threshold in *Twombly*.  *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *cf*. 5 Wright & Miller, Fed. Prac. & Proc. § 1224 (4th ed. 2025) (noting that the plaintiff must have "sufficient data to justify" information and belief pleading).

and using JET's proprietary *software*" and is thus liable to Plaintiff "for the fair market value of the converted *software*." (ECF No. 12 ¶¶ 53-54 (emphasis added)). Plaintiff cannot "amend [its] complaint[] through briefing" to assert a claim for conversion of the CD itself. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011)).

Even if Plaintiff had alleged a claim for conversion of the CD itself, it would not state a plausible claim for relief. Defendant initially was in lawful possession of the CD. (*See* ECF No. 12 ¶ 33). Therefore, Plaintiff's claim would constitute one of constructive conversion rather than actual conversion. *See K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 173 (1989) ("Constructive conversion is predicated on possession by the defendant that was initially lawful or rightful." (citation modified)). "In order to establish a constructive conversion, . . . it is necessary to show a demand for the return of the chattel by the rightful owner, and a refusal by the wrongful holder, or some assertion of an adversary right by the holder." *Yost*, 87 Md.App. at 388 (quoting *Durst v. Durst*, 225 Md. 175, 179 (1961)). Plaintiff neither pleads nor argues any such demand on Defendant. Instead, Plaintiff alleges

16

and argues that Defendant came into possession of the CD containing the ALF software on September 9, 2022, (ECF Nos. 12 ¶ 33; 16, at 10), Defendant's right to possess the CD ended on December 9, 2022, when the underlying contract terminated, (ECF Nos. 12 ¶¶ 26, 40; 16, at 10), and Plaintiff did not receive the returned CD until February 27, 2023, (ECF Nos. 12 ¶ 43; 16, at 10). These facts, taken as true, do not give rise even to an inference of demand. Without such a demand, it is difficult to evaluate the reasonableness of Defendant's delay in returning the CD. Where the chattel is returned undamaged and its deprivation caused the plaintiff only minor inconvenience, delays at least as long as five months can still fall short of the interference required to state a conversion claim. *See Diamond v. T. Rowe Price Assocs., Inc.*, 852 F.Supp. 372, 410 (D.Md. 1994) ("The five-month gap between T. Rowe Price's demand for the disputed documents and Diamond's return of the same may have caused T. Rowe Price some inconvenience. Such inconvenience, however, cannot be redressed through an action for conversion."). Plaintiff offers only speculation that the eleven-week delay in returning the CD undamaged caused more than minor inconvenience to its interests; the eleven-week delay falls well within the permissible five-month delay in *Diamond*. There is no plausible claim for conversion.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
